# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### OCALA DIVISION

**CHESTER L. SCOTT,**

      **Petitioner,**

**-vs-**                              **Case No.   5:16-cv-684-Oc-36PRL**

**SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,**

      **Respondents.**

_____/

## ORDER DENYING PETITION

Petitioner, a Florida prisoner acting *pro se*, initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Dkt. 1). Upon consideration of the petition, the Court ordered Respondent to show cause why the relief sought in the petition should not be granted (Dkt. 2). Respondent filed a Response and Appendix (Dkt. 5). Petitioner has filed a Reply and Notice of Supplemental Authority (Dkts. 6, 8). Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See* Habeas Rule 8(a).

## I. PROCEDURAL HISTORY

After a jury trial in Marion County, Petitioner was found guilty of one count of conspiracy to traffic in cocaine, 400 grams or more. (Dkt. 5, Respondents' Exhibits A, B, hereafter "Exh."). The case was prosecuted by the Florida Office of Statewide Prosecution.[1] (Exh. A). The evidence presented at trial consisted primarily of the contents of wiretaps and

---

[1] The Office of Statewide Prosecution is authorized to prosecute several enumerated offenses and "shall have such power only when any such offense is occurring, or has occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is connected with an organized criminal conspiracy affecting two or more judicial circuits." Fla. Stat. § 16.56(1)(a). *See also* Fla. Const. Art. IV § 4(b): "There is created in the office of the attorney general the position of statewide prosecutor. The statewide prosecutor shall have concurrent jurisdiction with the state attorneys to prosecute violations of criminal laws occurring or having occurred, in two or more judicial circuits as part of a related transaction, or when any such offense is affecting or has affected two or more

the testimony of witnesses who testified regarding the sale and purchase of cocaine with Petitioner. (Exh. B). The Second Amended Information alleged that the offense involved Marion, Levy, Alachua, and Hillsborough counties. (Exh. A). At the close of the case in chief, defense counsel moved to dismiss based on the failure of the Office of Statewide Prosecution to establish jurisdiction. (Exh. B, pp. 256-58). The trial court denied the motion. *Id.* at 262-63. On October 17, 2011, Petitioner was sentenced to 20 years in prison, with a mandatory minimum term of 15 years. (Exh. D at p. 54).

Petitioner appealed, raising one ground for relief: the defense motion to dismiss should have been granted because the Office of Statewide Prosecution did not have jurisdiction; the proceedings below were timely challenged and therefore voidable. (Exh. G). On November 2, 2012, the Fifth District Court of Appeal affirmed Petitioner's conviction and sentence, issuing a written opinion. (Exh. J); *Scott v. State*, 102 So.3d 676 (Fla. 5th DCA 2012). The court noted the lead investigator's trial testimony "that many of the intercepted calls associated with Scott's illegal activities originated in Levy County (which is in a different judicial circuit than Marion County). Under *King*, this testimony was sufficient to demonstrate the OSP's authority to prosecute the Marion County crime for which Scott was convicted." *Id.* at 678 (citing *King v. State*, 790 So. 2d 477, 479-80 (Fla. 5th DCA 2001)). The DCA also agreed that the motion to dismiss was untimely under Rule 3.190(c) of the Florida Rules of Criminal Procedure and was waived because it was not raised prior to trial. *Id.* The Florida Supreme Court declined to accept jurisdiction. (Exh. Q).

On July 17, 2013, Petitioner filed a state habeas petition raising claims of ineffective assistance of appellate counsel, followed by Amended and Second Amended Petitions. (Exhs.

---

judicial circuits as provided by general law.

R, S, Y).   The Fifth District Court of Appeal denied the petitions on August 29, 2014.   (Exh. CC.)

On June 27, 2014, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850.   (Exh. DD).   Petitioner eventually filed a second amended Rule 3.850 motion.   (Exh. EE).   The postconviction court conducted an evidentiary hearing on April 1, 2015. (Exh. HH).   Petitioner was represented by counsel at the hearing.   *Id.*   The trial court denied the Amended Motion for Postconviction Relief on May 4, 2015.   (Exh. II).   The Fifth District Court of Appeal affirmed *per curiam* without opinion on July 5, 2015.   (Exh. PP); *Scott v. State*, 198 So.3d 639 (Fla. 5th DCA 2015).

On November 28, 2016, Petitioner filed the present petition, raising six grounds for relief:

> 1.   Appellate counsel was constitutionally ineffective for failing to argue that the prosecutor introduced evidence that exceeded the scope of the information;
>
> 2.   Appellate counsel was constitutionally ineffective for failing to argue that it was error to admit unauthenticated audio recordings and transcripts of the recordings;
>
> 3.   Appellate counsel was constitutionally ineffective for failing to argue that it was error to deny the motion for judgment of acquittal because the evidence supported a buy-sell transaction, not a conspiracy;
>
> 4.   Appellate counsel was constitutionally ineffective for failing to argue that it was error to instruct the jury that it could find Petitioner guilty of conspiracy as a principal;
>
> 5.   Trial counsel was constitutionally ineffective for failing to object to the jury instruction permitting the jury to find Petitioner guilty of conspiracy as a principal; and,
>
> 6.   Trial counsel was constitutionally ineffective for failing to move to suppress the authorization for wiretap by the Office of Statewide Prosecution.

(Dkt. 1).

## II. GOVERNING LEGAL PRINCIPLES

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a

federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

**B. Ineffective Assistance of Counsel Standard**

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland* v. *Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice. Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or

omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citations omitted). *See also Cullen v. Pinholster*, 563 U.S. 170, 202 (2011) (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.") (citation omitted).

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of

ineffectiveness claims on either of its two grounds.").

**C. Exhaustion of State Remedies and Procedural Default**

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 *U.S.C. § 2254(b)(1); Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted

in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## III. ANALYSIS

**Ground One**

Petitioner contends that appellate counsel was ineffective for failing to argue "on direct appeal a claim that the trial court erred in overruling the defense objection to the State's evidence which exceeded the scope of the information." (Dkt. 1, Memorandum, p. 4). Petitioner argues that the Second Amended Information alleged the conspiracy occurred between September 29, 2008 and November 20, 2008, but the only evidence of a multi-circuit conspiracy was testimony regarding a phone call from Levy County outside of the charged timeframe. *Id.* The Fifth District Court of Appeal denied the state habeas petition without written opinion. (Exh. CC). In its opposition brief, the State wrote:

> The first objection Scott argues should have been presented is the trial court's overruling of the introduction of the brief testimony regarding the calls from Williston [Levy County]. However, as Scott notes at the end of his quoted portion, the trial court overruled the objection subject to the State tying it up with other witnesses. Scott does not show that defense counsel later argued that the State failed to tie up the information or that, once the State concluded its testimony, that defense counsel asserted that this was insufficient to overcome his objection. Thus, this argument was not preserved for appellate review. It is well established that in order to be cognizable on appeal, an argument must have been raised and fully presented to the trial court.

> Waiver not withstanding, the evidence was properly presented as inextricably intertwined. Evidence is inextricably intertwined if it is necessary to: (1) establish the entire context out of which the charged crimes arose; (2) provide an intelligent account of the crimes charged; or (3) adequately describe the events

9

leading up to the crimes. Here, the evidence was necessary to establish the context of the investigation and resulting wiretap that led to the discovery of the conspiracy in the instant case. Thus, the trial court did not abuse its discretion in admitting the evidence.

(Exh. U, pp. 5-6) (internal citations omitted).

Petitioner argues that "[a]bsent this evidence of phone calls from Levy County before September 29, 2008, the [Office of Statewide Prosecution's] jurisdiction to prosecute was never invoked, and a new trial would have been required on this claim." (Dkt. 1, Memorandum, p. 8).

Here, appellate counsel was not deficient for failing to raise an argument that was not preserved below. As this Court has concluded in a previous § 2254 petition:

> Because the indictment provided that the predicate offenses occurred in several different counties in Florida, the Office of the State Prosecutor had authority and jurisdiction to prosecute Petitioner. *See Winter v. State*, 781 So. 2d 1111, 1115 (Fla. 1st DCA 2001) (stating the Office of the Statewide Prosecutor does not have authority to prosecute a case when the charged crimes occurred in only one judicial circuit). Although Petitioner alleges that the State failed to prove that the crimes were committed in more than one judicial circuit, the general rule is that "jurisdiction is to be determined solely from the face of the information" or indictment. *Black v. State*, 819 So. 2d 208, 211 (Fla. 1st DCA 2002).

*Shorter v. Sec'y, Dep't of Corr.*, 2017 WL 6375750, at *4 (M.D. Fla. Dec. 12, 2017); *see also Cortes v. Gladish*, 2008 WL 728382, at *2-4 (M.D. Fla. Mar. 17, 2008) ("Thus, from the face of the amended information, jurisdiction existed for the Statewide Prosecutor to prosecute the case because a multi-circuit conspiracy was charged."). Here, the Second Amended Information alleged that the offense involved four counties: Marion, Levy, Alachua, and Hillsborough.

The prosecutor was not required to prove jurisdiction at trial, and both appellate counsel and trial counsel challenged the Office of Statewide Prosecution's jurisdiction. This argument is an attempt to reframe these jurisdictional challenges into an ineffective assistance of counsel claim, and for the reasons the jurisdictional claims were rejected in the trial and appellate courts,

this ineffective assistance claim also fails. However, even if appellate counsel was deficient, Petitioner cannot show that but for the omission of his claim in his direct appeal, his conviction would have been overturned by the appellate court.

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Ground 1 does not warrant federal habeas relief.

**Ground Two**

Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred by admitting unauthenticated transcripts of telephone recordings. (Dkt. 1, Memorandum, pp. 8-10). Trial counsel objected to the admission of the transcripts on the grounds that they were hearsay and bolstered the testimony of the State's witnesses. *Id.* The Fifth District Court of Appeal denied the state habeas petition without written opinion. (Exh. CC). In its opposition brief, the State wrote:

> The evidence lists and the trial transcripts completely refute this claim. The transcripts of the recorded calls were never placed into evidence, rather they were simply used as a demonstrative aide to the jury during the playing of the calls. [Exh. B2, p. 18]. The trial court instructed the jury several times on the proper use of the transcripts. [Exh. B2, pp. 18, 97]. In *Martinez v. State*, 761 So. 2d 1074 (Fla. 2000), the court set forth the procedure to publish transcripts, in the trial court's discretion, to the jury as demonstrative aides. As the transcripts were properly authenticated and Scott did not, and does not, challenge their accuracy, the trial court properly exercised its discretion in admitting them.
>
> Alternatively, error, if any was harmless. An error is held to be harmless where the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable probability that the error contributed to the conviction. Here, Scott points to no inaccuracy in the transcripts, the jury was instructed several times regarding the proper use of the transcripts, and the jury was not provided the transcripts during their deliberations.
>
> At best this was a weak claim. Appellate counsel is not ineffective for eschewing weaker claims and focusing on that which was more likely to prevail. Petitioner

has failed to show deficient performance or prejudice.

(Exh. U, pp. 7-8) (internal citations omitted).

"The general rule in Florida regarding admissibility of partially inaudible tape recordings is that partial inaudibility is not a ground for excluding a recording if the audible parts are relevant, authenticated, and otherwise properly admissible."  *Odom v. State*, 403 So. 2d 936, 940 (Fla. 1981).   A jury "may view an accurate transcript of an admitted tape recording as an aid in understanding the tape so long as the unadmitted transcript does not go back to the jury room or become a focal point of the trial."  *Martinez v. State*, 761 So. 2d 1074, 1084-84 (Fla. 2000).

Here, the transcripts were not admitted into evidence but used as a demonstrative aid. The trial court gave the jury the following warning early in the trial:

> Okay.   Members of the jury, you're gonna hear some taped conversations, telephone conversations on this disk.   They are gonna play the disk.   And to assist you in understanding the disk – this is the aid your [sic] are gonna be furnished a transcript of those disks.   And you are about to hear these recorded conversations. These recorded conversations are proper evidence, and you are to consider them just as any other evidence.   You are also being furnished transcripts of the recorded conversations.   These recordings are the evidence, and the transcripts provided will be as a guide to help you to follow as you listen to the recordings.   The transcripts are not evidence what was actually said or who said it.   If you notice any difference between what you hear on the recording and what you read in the transcripts, you must rely on what you hear, not what you read.   So the best evidence of what's been said is the recording. The transcripts are just an aid to assist you in understanding what was said, because they are not real clear language as we're speaking right now, which you'll be able to tell.

(Exh. B2, pp. 18-19).   Before witness Kadrinne Brewton took the stand, trial counsel requested that the same transcript instruction be read to the jury, and it was, in a somewhat abbreviated form.   *Id.* at 97-98.

Petitioner asserts that the transcripts of calls 1268 and 1266 were entered into evidence.

(Doc. 6, p. 8). He is correct that the trial transcript (Volume I) indicates that State's Exhibit 15A (transcripts for the 1268 and 1266 conversations) were entered into evidence. (Exh. B-1, p. 2, 80). Shortly thereafter, defense counsel pointed out to the trial court that the transcripts were entered into evidence. *Id.* at 85. The trial court stated, "They shouldn't be in evidence." *Id.* The transcript next shows an indiscernible conversation between the trial court and the Clerk. *Id.* The evidence list in this case does not show any transcripts entered into evidence. (Exh. E). Nor is there any indication that the jury used the transcripts during deliberation.

"Effective appellate counsel should not raise every nonfrivolous argument on appeal, but rather only arguments most likely to succeed. Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017) (internal citations omitted). Here, appellate counsel was not deficient for failing to challenge the transcripts where the court followed the appropriate procedures for using the transcripts as demonstrative aids. Nor can Petitioner show prejudice (i.e., that but for the omission of his claim in his direct appeal, his conviction would have been overturned by the appellate court), where the other parties to many of the phone calls—Ivan Starkes and Kadrinne Brown—testified against Petitioner. *See also Onstott v. Sec'y, Dep't of Corr.*, 2015 WL 1125206, at *9-10 (M.D. Fla. Mar. 12, 2015) (rejecting argument that trial court's handling of demonstrative transcripts was contrary to or an unreasonable application of federal law).

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Ground 2 does not warrant federal habeas relief.

**Ground 3**

Petitioner contends that appellate counsel was ineffective for failing to argue "that the evidence was insufficient to support a conspiracy and supported only a buy sell transaction." (Dkt. 1, Memorandum, pp. 10-12). The Fifth District Court of Appeal denied the state habeas petition without written opinion. (Exh. CC). In its opposition brief, the State wrote:

> The test for granting a motion for judgment of acquittal is a strict one. The trial court must not grant such a motion unless there is no legally sufficient evidence on which the trier of fact may base a verdict of guilty. *Jackson v. State*, 419 So. 2d 394 (Fla. 4th DCA 1982). In other words, a motion for judgment of acquittal should not be granted "unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law. In moving for judgment of acquittal, [the moving party] admit[s] the facts in evidence as well as every conclusion favorable to the state that the jury might fairly and reasonably infer from the evidence." *Taylor v. State*, 583 So. 2d 323, 328 (Fla.1991); *Lynch v. State*, 293 So. 2d 44, 45 (Fla. 1974).
>
> …
>
> Section 893.135(1)(b)1, Florida Statutes, states: "Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of 28 grams or more of cocaine . . . commits a felony , which felony shall be known as trafficking in cocaine, . . .". Further, "Any person who agrees, conspires, combines, or confederates with another person to commit any act prohibited by subsection (1) commits a felony of the first degree and is punishable as if he or she has actually committed such prohibited act." § 893.135(5), Fla. Stat. (2008).
>
> Here, the evidence in the light most favorable to the State shows that Scott conspired with multiple people to traffic in cocaine. The State presented the testimony of Ivan Starkes and recorded phone calls between Starkes and Scott in which Starkes and Scott repeatedly make arrangements for the purchase/delivery of cocaine in 9-ounce (250 gram) quantities. [Exh. B2, 22-55]. Starkes specifically testified that he was just the go-between for his supplier and Scott; he was not making any money off of the transactions. [*Id.* at 22]. Thus, Starkes and Scott were agreeing that Starkes would purchase the drugs from the supplier with Scott's money and then would deliver the drugs to Scott's home.
>
> Kadrinne Brewton testified he had a business relationship with Scott whereby Brewton would sell Scott cocaine in quantities varying between three ounces and an entire kilo of cocaine. [*Id.* at 103]. In addition to Brewton's testimony, the State introduced recorded calls between Brewton and Scott. [*Id.* at 103-96]. Brewton regularly delivered cocaine to Scott; however, when Scott would come

to Brewton, Scott would always bring Leroy Epps.   [*Id.* at 105, 109-10]. Epps and Scott would arrive in separate cars and, after purchasing the cocaine, Epps would take the cocaine because Scott did not want to travel with it.  [*Id.* at 109-10].  Scott would then follow.  The State also introduced a DVD showing persons described as Scott and Epps picking up a half a kilo of cocaine from Brewton at Scott's house on October 3.  [*Id.* at 128-33].  A phone call introduced from October 4 reveals Scott complaining to Brewton that the cocaine would not cook properly into crack and that Scott had unhappy customers returning the product.  [*Id.* at 135-38].

The State also introduced a call between Epps and Scott in which Scott informs Epps that a third party, "Ray," was going to buy 3.5 grams of cocaine for $120. [*Id.* at 118-19].   In another call, Scott warns Epps that a Task Force is in the area and to put the drugs away so Epps would not get caught.  [*Id.* at 125-27].

Another series of phone calls was introduced showing that after Epps was stopped by police, Scott told his brother Mike about Epps being stopped and how Epps had been instructed to get the weight down.  [*Id.* at 152-57].  In a phone call with Brewton, Scott again complains Epps was stopped and explains that he had instructed Epps that if he was ever stopped to wait until the police were half-way to the car and then to pull off and start throwing cocaine out the window to get the weight down before stopping again.  [*Id.* at 160-64].  There were also calls between Scott and his brother Mike regarding the purchase of various amounts of drugs.  [*Id.* at 186, 188-90].

The evidence in the light most favorable to the State was more than sufficient to show that Epps and Scott conspired to sell/deliver a trafficking amount of drugs to an unknown third party, that Epps and Scott conspired to purchase trafficking amounts from Brewton, that Epps and Scott conspired regarding the delivery of trafficking amounts of drugs including a plan to "get the weight down" if Epps was stopped during the delivery, that Scott and Starkes conspired to purchase trafficking amounts from an unknown third party, and that Scott conspired with his brother Mike regarding the purchase of trafficking amounts of drugs.

A conspiracy exists where there is an express or implied agreement between two or more persons to commit a criminal offense and an intention to commit the offense.  *Schlicher v. State*, 13 So.3d 515, 517 (Fla. 4th DCA 2009).  Generally, Florida courts have affirmed convictions where the "defendants are involved in a series of meetings, arrangements and negotiations to sell or buy illegal drugs that lead to such sale or purchase."  (quoting *Leigh v. State*, 967 So. 2d 1102, 1104 (Fla. 4th DCA 2007)).  Scott's involvement spanned an extended period of time, involved specific instructions regarding deliveries to locations often on a daily basis, included negotiations for amounts and pricing for drugs, and well-exceeded a daily or weekly supply for personal use.  Scott was involved in more than a buy/sell relationship and the trial court properly rejected this argument.  *See*

*Vazquez v. State*, 111 So. 2d 273 (Fla. 2d DCA 2013).

(Exh. U, pp. 9-13).

Florida courts have held that "[a] conspiracy is an express or implied agreement or understanding between two or more persons to commit a criminal offense." *Sheriff v. State,* 780 So.2d 920, 921 (Fla. 4th DCA 2001). "To prove the crime of conspiracy, the state must prove an agreement and an intention to commit an offense." *Id.* The offense of "[c]onspiracy is a separate and distinct crime from the offense that is the object of the conspiracy ." *Id.* (citing *Ramirez v. State,* 371 So.2d 1063, 1065 (Fla. 3d DCA 1979)).   *Aguilar v. Sec'y, Dep't of Corr.*, 2008 WL 5142411, at *11 (M.D. Fla. Dec. 5, 2008).

In the present case, there was sufficient evidence to establish that Petitioner engaged in a conspiracy to traffic in cocaine, as set forth in great detail by the State above.  Appellate counsel was not deficient for failing to raise an argument that was not a strong one.   Nor can Petitioner show that but for the omission of his claim in his direct appeal, his conviction would have been overturned by the appellate court.

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts.   Ground 3 does not warrant federal habeas relief.

**Ground 4**

Petitioner contends that appellate counsel was ineffective for failing to argue on direct appeal that the principal instruction should not have been given in connection with conspiracy. (Dkt. 1, Memorandum, p. pp. 13-15).   The Fifth District Court of Appeal denied the state habeas petition without written opinion.   (Exh. CC).

The trial court instructed the jury that Petitioner was charged with "conspiracy to traffic

in cocaine 400 grams or more." (Exh. B-2, p. 313). It later stated: "If the defendant helped another person or persons commit a crime, the defendant is called a principal, and must be treated as if he had done all the things the other persons did. If one, the defendant had a conscious intent that the criminal act be done; and two, the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime, to be a principal, the defendant does not have to be present when the crime is committed." *Id.* at 316-17. Trial counsel did not object to the jury instructions.

In Florida, "[j]ury instructions are subject to the contemporaneous objection rule, and in the absence of a contemporaneous objection at trial, relief regarding error in the instructions can be granted on appeal only if that error is fundamental." *Floyd v. State*, 850 So. 2d 383, 403 (Fla. 2002). In order for an error to be fundamental, it "must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960).

Here, appellate counsel was not deficient in failing to raise this claim on direct appeal. It was procedurally barred and did not arise to the level of fundamental error. Any defects in the instructions were not so egregious "that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown*, 124 So. 2d at 484. Here, the state's argument at trial was that the evidence showed that Petitioner was the primary conspirator and a substantial participant. The evidence supported Petitioner's active participation in the conspiracy to traffic cocaine.

Accordingly, Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the

facts.    Ground 4 does not warrant federal habeas relief.

**Ground 5:**

Petitioner alleges that trial counsel was constitutionally deficient for failing to object to the jury instructions informing the jury that it could find petitioner guilty of conspiracy as a principal.    (Dkt. 1, Memorandum, pp. 18-22).    In rejecting these claims on postconviction review, the trial court wrote:

> In response to this claim, Mr. Reich [trial counsel] testified that the instruction should not have been given and that he should have objected to the instruction. Had he objected to the instruction, it would not have been given.    Mr. Reich said: "[a]ll I can tell you is I missed it."    (Evidentiary Hearing Transcript, page 18).

> Notwithstanding Mr. Reich's acknowledgement that he made an error, the defendant has failed to establish he was prejudiced in any way by the error.    In the response to the defendant's motion filed by the State, it is pointed out that:

>> The jury heard 30 intercepted phone calls from the defendant all pertaining to trafficking in cocaine, saw a video of the defendant picking up one-half a kilogram of cocaine from Kadrinne Brewton, a co-defendant, and heard from two of the men that were also intercepted on a majority of those calls, Kadrinne Brewton and Ivan Starkes.    The testimony of Brewton and Starkes provided the jury with an explanation as to exactly what they were discussing with defendant and they were clear in that they were discussing trafficking in cocaine.    The jury even heard a series of calls between defendant and his brother and co-defendant, Michael Scott, and between defendant and co-defendant Kadrinne Brewton, where defendant was bragging about another co-conspirator, Leroy Epps, following his instruction on what to do if he should ever get pulled over with a trafficking amount of cocaine in his vehicle.    As the jury heard the intercepted calls, the defendant had instructed Mr. Epps to wait for law enforcement to walk up to his vehicle and then take off in order to allow him to get the weight under a trafficking amount by breaking it up and tossing it out the window.    Whether or not the defendant was a member of the conspiracy was not disputed at trial.

> State's Response to Amended Motion for Post Conviction Relief, page 6.

In his closing remarks at the evidentiary hearing, post conviction counsel for the defendant acknowledged that "there's a large amount of evidence in this case besides just the improper jury instruction that was actually entered into that would indicate that Mr. Brewton [sic] was involved in some type of illegal activity. There's no doubt about that if you go back and read the record and the court transcripts and the trial transcripts." However, counsel argued the defendant is entitled to a new trial in spite of this evidence because the improper jury instruction "could have necessarily led the jury to believe something completely different . . ." (Evidentiary Hearing Transcript, page 37). Counsel argued that the improper jury instruction was "fundamental error." (Evidentiary Hearing Transcript, page 36).

The defendant relies upon *Morgan v. State*, 146 So.3d 508 (Fla. 5th DCA 2014), which held, *inter alia*, that trial counsel was ineffective for failing to object to jury instructions that included uncharged offenses, and that if a defendant is convicted of an uncharged offense it violates due process. There is, in *Morgan*, a thorough examination of the charging document, the jury instructions, and the verdict. Morgan was indeed convicted of an uncharged offense. However, in the instant case, the defendant was convicted as charged in the information. (*See* Second Amended Information and verdict form, Clerk's docket numbers 131 and 139, copies attached). There is only speculation that the principal jury instruction had any influence on the jury at all. Based upon the strength of the evidence presented against the defendant at trial, any error in this instruction would have been harmless.

This court has reviewed the record from the trial in this cause. The record supports the argument by the State as to why this claim should be denied. The defendant has failed to demonstrate that the error was so serious as to deprive him of a fair trial with a reliable result. The defendant in this case was not convicted of an uncharged crime.

Finally, if the jury instruction was fundamental error, Mr. Reich was not required to object and the matter should have been raised on direct appeal. If it is truly a matter of fundamental error, it cannot be raised in a post conviction motion because it could have and should have been raised on direct appeal. *Franqui v. State*, 965 So. 2d 22, 35 (Fla. 2007), and *Brudnock v. State*, 16 So.3d 839 (Fla. 5th DCA 2009). If fundamental error has occurred, it may be raised on direct appeal without an objection at trial. *See State v. Delva*, 575 So. 2d 643, 644 (Fla. 1991); *Reed v. State*, 837 So. 2d 366, 370 (Fla. 2002); and *State v. Weaver*, 957 So. 2d 586, 588 (Fla. 2007).

This court does not conclude that the confessed error is fundamental error because the mistake does not "reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." *Brown v. State*, 124 So. 2d 481, 484 (Fla. 1960). The argument

by the defendant that he could have been convicted as charged because of the reliance on the principal jury instruction is speculation.

(Exh. II, pp. 228-32).

Petitioner relies on a case from the Third District Court of Appeal for the proposition that "the principal instruction should not have been given in connection with the conspiracy charges." *Evans v. State*, 985 So. 2d 1105, 1107 (Fla. 3d DCA 2007). In that case, a state habeas petition alleging ineffective assistance of appellate counsel was granted where trial counsel objected to the instruction, but appellate counsel did not raise it on direct appeal. *Id.* The Respondent points to *Rondon v. State*, 157 So.3d 360, 361 (4th DCA 2015), which held that appellate counsel was not ineffective where trial counsel did *not* object to a conspiracy instruction in a drug trafficking case, finding it did not rise to the level of fundamental error.

Two federal habeas opinions on this issue are of particular relevance. The first was decided by the Southern District of Florida in 2011. In *Wiggins v. McNeil*, the § 2254 petitioner challenged the effectiveness of his appellate counsel where he did not challenge the inclusion of the principal instruction in a conspiracy case. 2011 WL 3878335 (S.D. Fla. Aug. 31, 2011). The court granted habeas relief as to this one count because the three co-defendants all received habeas relief in state court on the same claim, finding that "[j]ustice requires that Wiggins be afforded the same relief the state court afforded" his co-defendants and the defendant in *Evans*. *Id.* at *13.

In this Court, the issue was raised in *Cooper v. Sec'y, Fla. Dep't of Corr.*, Case No. 3:10-cv-951-J-32JRK (M.D. Fla. Oct. 26, 2015).[2] The petitioner was convicted of conspiracy

---

[2] A March 14, 2014 Order referenced by Petitioner is available on LexisNexis at 2014 U.S. Dist. Lexis 30592. However, the Court could not locate the order denying the petition on a commercial legal publishing service.

to traffic in a controlled substance.  (*Cooper,* Dkt. 25).   In his federal habeas petition, he argued that trial counsel was constitutionally ineffective for failing to object or otherwise request special or curative jury instructions regarding the law of principals as it applies to conspiracy. *Id.*   The Court, citing *Wiggins* and *Evans*, appointed counsel for further briefing on the issue. *Id.* at Dkt. 20.   After additional briefing, the Court ruled that any errors by counsel in regard to the principal jury instructions did not affect the outcome of the case because the evidence presented at trial was that the petitioner actually conspired to traffic in cocaine, not that he merely aided and abetted in the conspiracy.   *Id.* at Dkt. 25, pp. 7-14.   Noting the deference required to a state court's findings as to performance and prejudice, the Court detailed the testimony supporting a finding that the petitioner was an active member of the conspiracy.   *Id.* "Thus, because the evidence supports a finding that Petitioner was an active member of the conspiracy, not merely an aider or abettor, any error in instructing the jury regarding the principal theory was harmless."   *Id.* at p. 14.   The petitioner appealed, and the Court of Appeals denied a Certificate of Appealability.   *Id.* at Dkt. 29.

"To show that counsel rendered ineffective assistance by not objecting to a jury instruction, [a petitioner] must show that (1) the instruction was improper, (2) a reasonably competent attorney would have objected to the instruction, and (3) the failure to object prejudiced him."   *Baker v. Sec'y, Dep't of Corr.*, 2019 WL 1400400, at \*14 (M.D. Fla. Mar. 28, 2019) (citing *Daugherty v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988)).   Assuming, *arguendo*, that the instruction was improper; and that trial counsel's admission at the evidentiary hearing meant that a reasonably competent attorney would have objected to the instruction, this claim comes down to whether Petitioner was prejudiced.

---

Accordingly, citations are made directly to the docket.

"Under the prejudice prong, petitioner's burden to demonstrate prejudice is high. Prejudice requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. That is, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. The petitioner must show more than that the errors had some conceivable effect on the outcome of the proceeding. The petitioner must affirmatively prove prejudice by demonstrating that the unprofessional errors were so egregious as to render the trial unfair and the verdict suspect." *Smith v. Sec'y, Fla. Dep't of Corr.*, 743 Fed. Appx 386, 389 (11th Cir. 2018) (internal citations omitted).

In the present case, as in *Cooper*, any error regarding the jury instruction on the principal theory was harmless where the evidence clearly demonstrated that Petitioner was an active participant in the conspiracy. The state court's conclusion that Petitioner was not prejudiced by the failure to object to the instruction was based on the phone call recordings pertaining to drug trafficking; video of the Petitioner picking up cocaine; and the testimony of Kadrinne Brewton and Ivan Starkes regarding their drug activity with Petitioner. (Exh. II, pp. 228-32). The trial court also noted that Petitioner had not been convicted of an uncharged crime. *Id.* The trial court's determination that Petitioner was not prejudiced under *Strickland,* a finding entitled to deference by this Court, was not an unreasonable application of *Strickland,* or an unreasonable determination of the facts in light of the evidence adduced in state court. Ground 5 is without merit.

**Ground 6**

Petitioner contends that trial counsel was ineffective for failing to move to suppress the

authorization for wiretap. (Dkt. 1, Memorandum, pp. 18-22.) The September 22, 2008, order authorizing the wiretap states that "(5) The person authorizing the aforesaid application to be made before this Court is by William N. Shepherd, Statewide Prosecutor for the State of Florida." (Dkt. 6, Exh. I.) Petitioner argues that the Statewide Prosecutor at the time of his subsequent prosecution was Nicholas B. Cox, and because he did not authorize the wiretap, it was illegal. (Dkt. 1, Memorandum, p. 6.) Petitioner points to the federal wiretap statute, 18 U.S.C. § 2156(2), which states: "The principal prosecuting attorney of any State, or the principal prosecuting attorney of any political subdivision thereof, if such attorney is authorized by a statute of that State to make application to a State court judge of competent jurisdiction for an order authorizing or approving the interception of wire, oral, or electronic communications . . ."

> In rejecting this claim on post-conviction review, the state court wrote:

> In this claim the defendant alleges Mr. Reich was ineffective for failing to object to the introduction of the recordings of the telephone calls at trial because the recordings were inadmissible under a federal statute (18 U.S.C. s. 2516(2)).

> Mr. Reich testified [at the Rule 3.850 Evidentiary Hearing] that he did not believe there was any violation of the federal statute on wiretaps. He further testified that he did think there was a violation of the Florida Statutes "so far as the involvement of the statewide prosecutors was concerned." (Evidentiary Hearing Transcript, pages 32, 33). As already addressed above, Mr. Reich made objections to the jurisdiction of the statewide prosecutor, those objections were over-ruled, and the jurisdiction of the state prosecutor was upheld on appeal.

> There was no evidence offered by the defendant in support of this claim.

(Exh. II, p. 20).

Petitioner has offered no evidence or citation of authority that would preclude a wiretap authorization from a former Statewide Prosecutor from being used by his successor. Nor has he shown that such a motion would be successful. Trial counsel testified at the evidentiary hearing that he did not believe there was a violation of the federal wiretap statute. (Exh. HH, pp.

32-33).   A motion to suppress a state wiretap pursuant to 18 U.S.C. § 2156(2) on the grounds Petitioner raises would have failed.   *See Adams v. Lankford*, 788 F. 2d 1493 (11th Cir. 1986) (rejecting habeas claim where motion to suppress challenged the validity of a wiretap based on argument of what was a "political subdivision" under § 2156(2)); *Bell v. Sec'y, Dep't of Corr.*, 2018 WL 10425948, at *5-6 (M.D. Fla. Feb. 12, 2018) (rejecting habeas petitioner's challenge to validity of Statewide Prosecutor's authority to authorize wiretap under the federal statute).

Petitioner has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland* or based on an unreasonable determination of the facts. Accordingly, Ground 6 does not warrant federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein are without merit.

It is therefore **ORDERED AND ADJUDGED** that:

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.   The **Clerk** shall enter judgment accordingly and close this case.

2. This Court should grant an application for a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   A certificate of appealability is **GRANTED** only on these issues: whether Petitioner is entitled to relief on the ground that his trial counsel and appellate counsel rendered ineffective assistance in failing to object to the jury instructions challenged in Grounds Four and Five of the petition. A certificate is denied on all other grounds.

**DONE AND ORDERED** in Ocala, Florida on March 24, 2020.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

24

Copies to: Petitioner *pro se*; Counsel of Record